**In re NSB FILM CORPORATION, fka Hemdale Film Corporation, a Delaware Corporation, Debtor.**

**The OFFICIAL COMMITTEE OF UNSECURED CREDITORS, Appellant,**

**v.**

**CREDIT LYONNAIS BANK NEDER-LAND, N.V., Screen Actors Guild, Chase Manhattan Bank, and NSB Film Corporation and Affiliates, Appellees.**

**BAP No. CC–93–1445–OVJ.**
**Bankruptcy No. LA 92–44365–KL.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on March 23, 1994.

Decided April 19, 1994.

Stephen Chrystie, Los Angeles, CA, for Official Committee of Creditors.

Kimberly S. Winick, Los Angeles, CA, for Chase Manhattan Bank.

Michael S. Abrams, Los Angeles, CA, for NSB Film Corp.

Paul J. Laurin, Los Angeles, CA, for Credit Lyonnais Bank.

Joseph A. Kohanski, Burbank, CA, for Screen Actors Guild.

Before OLLASON, VOLINN and JONES, Bankruptcy Judges.

1. Unless otherwise stated, all references to "section" refer to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, as amended.

*OPINION*

OLLASON, Bankruptcy Judge:

The Unsecured Creditor's Committee (the Committee) filed an objection to NSB Film Corporation's (the Debtor) motion to use cash collateral pursuant to a stipulation entered into with certain secured creditors. The bankruptcy court entered a conditional order approving the Debtor's motion. The Committee appeals. We DISMISS.

### STATEMENT OF FACTS

On September 24, 1992, an involuntary petition was filed against the Debtor under 11 U.S.C. § 303.[1] On October 29, 1992, the Debtor converted the case to a case under Chapter 11. The Debtor's principal assets include the ownership of the intellectual property rights in a library of films, various accounts receivables, and contract rights arising from the sale, licensing or other distribution of some or all of the films, claims or causes of action. Credit Lyonnais Bank Nederland, N.V., Screen Actors Guild, and Chase Manhattan Bank (the Creditors) collectively asserted a security interest in substantially all of the Debtor's assets.

Assuming that the Creditors' interests were perfected, the Debtor would not have had any funds to operate the business without the use of the Creditors' alleged cash collateral. As a result, on or about January 27, 1993, the Debtor via Mr. John W. Hyde [2] and the Creditors entered into a stipulation whereby these Creditors allowed the Debtor to use their alleged cash collateral under certain terms and conditions. The stipulation's preamble, in pertinent part, stated:

NSB may dispute the amount claimed due, the validity, perfection, enforceability and avoidability of the Creditors' liens and claims. In addition, NSB may assert various defenses, offsets and counterclaims against Creditors.

Record at 2.

The stipulation's commanding language, in pertinent part, stated:

2. Subsequent to the case being converted to a case under Chapter 11, an outsider, John W. Hyde, was hired post-petition as the Debtor's chief executive officer.

12. To the extent of any Cash Collateral actually used, Creditors shall be granted a replacement lien (the "Replacement Lien") in all of the assets of the estate regardless of whether the assets existed or arose before or after the entry of the order for relief.... [T]he Replacement Lien granted by this paragraph shall constitute a first lien on all property of the estate that is not subject to a lien and a junior lien on all property that is subject to a lien. The Replacement Lien shall be deemed automatically perfected and no further action to perfect the Replacement Lien shall be necessary.

13. To the extent of any Cash Collateral actually used, Creditors shall have an allowed administrative claim under 11 U.S.C. § 503(b), which claim shall be entitled to a "superpriority" pursuant to 11 U.S.C. § 507(b) of the Bankruptcy Code, higher in priority than any and all administrative claims to the estate's assets to the extent that the liens provided for herein are insufficient to protect Creditors with regard to the Cash Collateral actually expended by the Debtor pursuant to this Stipulation.... Creditors' claims as discussed in this paragraph shall have priority over any and all administrative expenses of the kind specified in 11 U.S.C. §§ 503(b) or 507(b)....

19. Notwithstanding anything to the contrary contained herein, this Stipulation shall not constitute a release of any claim, defense, offset, right or power which any party may have or assert against any other party hereto and shall not be deemed to constitute an admission of the validity, enforceability, avoidability, perfection or amount of the Creditors' claims or liens, nor shall it constitute an admission that said claims and liens are not valid, enforceable, nonavoidable, perfected and due in the amounts claimed. All of the parties hereto expressly reserve their rights with respect to all such issues and assertions.

Record at 5–8.

On or about January 28, 1993, the Debtor filed a motion for the use of the alleged cash collateral and to approve the stipulation for the use of the alleged cash collateral [3] with a supporting memorandum, the declaration of Mr. Hyde, and a copy of the stipulation. On or about February 4, 1993, the Committee filed an objection. On or about February 5, 1993, the Debtor filed a response.

On February 8, 1993, the bankruptcy court held a hearing on this matter. At that hearing, the following conversation, in pertinent part, took place:

> The Court: Can you articulate for me what's the dollar bill consequence that you're concerned with and I can understand the dollar bill consequence from the creditors point of view if there's cash collateral gets used and there's not enough to pay their lien and their cash was dissipated, then seems to me it would have decreased in value and they would have been entitled, they would be entitled to some recourse for that. If, on the other hand, their, the use of the cash collateral does enhance the value of the collateral and they end up being paid, then its a kind of no harm, no foul, isn't it?
>
> Mr. Hankin: Well, it is and it isn't. To the extent that the stipulating creditors are permitted to accumulate these replacement lien, you know, it—
>
> The Court: But it's only for the use of cash, right?
>
> Mr. Hankin: That's correct. That's correct, Your Honor.
>
> The Court: It would seem to me that probably the creditors kind of win on that point but if the debtor's going to use the cash then they're entitled to some, and this appears to me to be a prophylactic remedy just in case rather than, and I guess the creditors committee is, your position is, let's wait and see what happens and—
>
> .    .    .    .    .
>
> The Court: Okay, if I've missed some of these issues I take it you will remind me.

**3.** The Debtor's motion was actually entitled, "Motion for the use of cash collateral and to approve stipulation for the use of cash collateral and limited relief from the automatic stay, and set a hearing date to consider a further stipulation or alternatively, the Debtors' continued use of cash collateral."

It appears that the problem under 364 has gone away by agreement. Under 361 I'll approve the replacement lien and the 503(b) priority that follows.... With regard to the, if it subsequently appears that this is not cash collateral, I think, as a matter of law automatically there is no lien because there was no cash collateral. It also appears to me that probably someone is going to have to come to the court and get an order that clarifies the position of the parties with regard to these liens because if it comes up under an adversary proceeding, for example, brought by the creditors committee I have no doubt that the adversary proceeding would include some kind of cause of action for the extinguishment of any liens by, granted post petition or whatever might be appropriate.

If it comes up in some other context and anything has been filed with the Secretary of State or has been filed with the real property records, those records have to be cleared and they're probably only cleared comfortably, from a lawyer's standpoint, if they've got an order of the court that says that either they do or they don't have a lien. I just think it's premature now. If there's no cash collateral I think that ends it.

If there is some other reason to argue that the quality of the lien or the priority of the lien is such that they would not have been entitled to this kind of adequate protection from the beginning of this case, that decision is premature. If they're in a position where they should have been subordinated from the very beginning but can't bring that kind of litigation fast enough and still have the company survive, I don't know of anything that prevents the court from going back and saying, for example, that really wasn't cash collateral or Credit Lyonnais wasn't entitled to have its cash collateral protected at the expense of

everyone else but that would require some kind of findings and conclusions that, I think, would only arise on an adversary proceeding unless that parties agree because the proof was so clear.

Record at 110–29.

On March 24, 1993, the bankruptcy court entered a conditional order approving the Debtor's motion for the use of the alleged cash collateral pursuant to certain terms and conditions.[4] The bankruptcy court's order, in pertinent part, stated:

2. The debtor is authorized to use cash collateral subject to the terms and conditions contained in the stipulation as modified by this order;

3. The Stipulation shall be deemed modified by deleting from it the reference to 11 U.S.C. § 364(c)(2) and (3) in paragraph 12 of the Stipulation and the reference to 11 U.S.C. § 364(c)(1) in paragraph 13 of the Stipulation;

4. The Stipulating creditors shall be granted a replacement lien as set forth in the Stipulation constituting a first lien on all property.... that is not subject to a lien and a junior lien on all property that is subject to a lien and shall be entitled to an administrative claim under 11 U.S.C. § 507(b) provided however, that this lien and administrative claim is without prejudice to the court's further consideration of whether a lien or administrative claim is appropriate in connection with any subsequent approvals of the use of cash collateral.

Record at 93.

On April 5, 1993, the Committee timely filed its notice of appeal.

## STANDARD OF REVIEW

■ The bankruptcy court's conclusions of law are reviewed *de novo*, and its findings of

---

4. Although on or about December 8, 1993, the bankruptcy court approved the Stipulation and two supplemental motions for the use of cash collateral pursuant to the terms of the Stipulation, both of the subsequent bankruptcy court orders do not render this appeal moot because they both contain the following language:

[t]he ruling on the appeal filed by the Official Committee of Unsecured Creditors from the

Court's prior Order Granting Motion for Use of Cash Collateral entered March 24, 1993 will be binding on the parties as the issue of the grant of a replacement lien and of an administrative claim as provided in this and all prior cash collateral orders entered in this proceeding. Appellant's Opening Brief at Exhibits A & B.

fact are reviewed for clear error. *In re Siriani,* 967 F.2d 302, 303–304 (9th Cir.1992) (citing *In re Woodson Co.,* 813 F.2d 266, 270 (9th Cir.1987)).

## DISCUSSION

■ As an initial question, the Panel must determine its jurisdiction to review this order on appeal. The standard for determining finality in the bankruptcy context is more flexible than in other contexts. *See In re Frontier Properties, Inc.,* 979 F.2d 1358, 1363 (9th Cir.1992); *In re Adams Apple, Inc.,* 829 F.2d 1484, 1487 (9th Cir.1987). In *Frontier Properties,* the Ninth Circuit summarized the test for determining whether or not a bankruptcy order is appealable. The Ninth Circuit stated a bankruptcy court order is appealable when it: "1) resolves and seriously affects substantive rights and 2) finally determines the discrete issue to which it is addressed." *Frontier Properties, Inc.,* 979 F.2d at 1363 (citing *In re Allen,* 896 F.2d 416, 418–19 (9th Cir.1990)).

■ Here, the bankruptcy court and the parties specifically reserved the determination of the validity, priority, and extent to which the Creditors are secured and the defenses the Debtor may assert for a later date, as evidenced by the bankruptcy court's conclusions on record, the bankruptcy court's order, and the language of the stipulation. The bankruptcy court's order also does not affect any substantive rights because any party may still file an adversary proceeding to determine these issues. Furthermore, the bankruptcy court's order does not determine the discrete issue of whether or not the Creditors are entitled to the replacement lien or alternatively an administrative expense because the bankruptcy court's order is clearly conditioned on a future determination. Therefore, the factors set forth in *Frontier Properties,* have not been demonstrated. As such, we conclude that the bankruptcy court's order on appeal is interlocutory.

■ The Panel may, in its discretion, review interlocutory orders. Although no motion for leave to appeal has been filed, we may treat the notice of appeal as a motion for leave to appeal. Fed.R.Bankr.P. 8003(c); *In re Stewart,* 157 B.R. 893, 895–96 (9th Cir. BAP 1993). Leave to appeal should not be granted unless refusal would result in wasted litigation and expense, the appeal involves a controlling question of law as to which there is a substantial ground for difference of opinion, and an immediate appeal would materially advance the ultimate termination of the litigation. *In re Caribbean Tubular Corp.,* 44 B.R. 283, 285 (Bankr.D.P.R.1984). Here, since ultimately there must be a determination as to the status of the Creditors on the collateral, the Panel cannot conclude that: 1) refusal will result in wasted litigation and expense; 2) there is a controlling question of law as to which there is a substantial ground for difference of opinion; and 3) an immediate appeal would materially advance the ultimate termination of the litigation.

The Committee also argues that the Creditors presented no evidence which establishes the validity, extent, and value of their claimed interest in the Debtor's film library.

■ Issues that are raised for the first time on appeal will not be considered. *In re Wind Powers Systems, Inc.,* 841 F.2d 288, 290 n. 1 (9th Cir.1988). Here, the bankruptcy court did not have the opportunity to consider this issue, and as such, the Panel will not consider it.

## CONCLUSION

For the reasons previously stated above, the Panel concludes that the Committee's appeal of the bankruptcy court's conditional order granting to the Creditors adequate protection by way of a replacement lien under § 361 and an administrative claim under § 507(b) is interlocutory and that leave should not be granted. This appeal is hereby DISMISSED.