**In re GREENFIELD DRIVE STORAGE PARK, a California limited partnership, Debtor.**

**GREENFIELD DRIVE STORAGE PARK, Appellant,**

**v.**

**CALIFORNIA PARA–PROFESSIONAL SERVICES, INC., Appellee.**

**BAP No. SC–96–1871–RORY.**

**Bankruptcy No. 91–07397.**

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued and Submitted Feb. 21, 1997.

Decided April 2, 1997.

914

Ronald W. Williamson, San Diego, CA, for Greenfield Drive Storage Park.

William Smelko, Webb, Smelko & Carey, San Diego, CA, for California Para–Professional Services, Inc.

Before: RUSSELL, OLLASON, and RYAN, Bankruptcy Judges.

## OPINION

RUSSELL, Bankruptcy Judge:

The bankruptcy court issued an order to show cause why debtor's chapter 11 case should not be converted to chapter 7 for material default in plan performance. After the show cause hearing, the bankruptcy court ordered the debtor's chapter 11 [1] case converted to chapter 7 pursuant to § 1112(b)(8). Debtor appeals the bankruptcy court's order converting its chapter 11 case to chapter 7. We AFFIRM.

## I. FACTS

The debtor, Greenfield Drive Storage Park ("GDSP"), is a limited partnership. The general partner of GDSP is Xinos Enterprises, Inc. and the limited partners are Raleigh A. Kirkendall, Jeffrey J. Abrams, and the estate of Robert A. Audia.

GDSP purchased real property [2] in El Cajon, California for the purpose of constructing a storage facility. To finance the construction of the storage facility, the partnership obtained a loan from HomeFed Bank for $1,990,000 which was secured by a note and deed of trust on the property. In GDSP's loan agreement with HomeFed, GDSP was required to obtain permanent financing upon the due date of its construction loan, April 1, 1990. The due date was later extended to October 1, 1990.

After construction of the storage facility was completed, GDSP engaged in two principal types of business activities at the storage facility: personal property mini-storage and a record storage service.

GDSP rented the storage facility to various tenants. initially, the storage facility attracted numerous renters, enough to provide a 50% occupancy level in 1990. However, soon thereafter, storage facility rentals slowed dramatically, which resulted in a negative monthly cash flow.

To compensate for the negative monthly cash flow, GDSP obtained an additional loan of $600,000 from California Para–Professional Services, Inc. ("CPPS"), which was secured by a note and second deed of trust on the property.

Despite obtaining additional financing, GDSP was unable to pay off the construction loan that became due and payable on October 1, 1990. Consequently, HomeFed Bank initiated judicial foreclosure proceedings against the property in June, 1991.

To stay the foreclosure proceedings, GDSP filed its chapter 11 case on July 2, 1991. The bankruptcy court confirmed GDSP's chapter 11 plan on November 18, 1992. The plan provided that GDSP's creditors would be paid in full "either through the net cash flow realized from the continued operation of the debtor's business, or by sale of the real property." As to CPPS' secured claim, the plan provided that CPPS "shall retain its lien on all real and personal property of debtor to the extent provided under its existing deed of trust and security agreement."

For a few years after confirmation, GDSP operated the storage facility and made all payments under the plan. But eventually, due to slowed business, GDSP ceased making payments under the plan. As a result, HomeFed Bank commenced a non-judicial foreclosure action regarding the property. HomeFed Bank purchased the property at the foreclosure sale.

Following the foreclosure sale, CPPS filed a motion on May 31, 1996 seeking clarification from the bankruptcy court as to the effect of the completed foreclosure on GDSP's plan. The bankruptcy court denied CPPS' motion for clarification.

On July 4, 1996, the bankruptcy court issued an order to show cause why GDSP's chapter 11 case should not be converted to chapter 7 for material default in plan performance. The bankruptcy court scheduled the order to show cause hearing for August 9, 1996. At the hearing, the bankruptcy court stated that the plan was in default and, thus, the chapter 11 case should be converted.

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. § 101–1330 and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

2. This property was the only asset of GDSP.

Further, the bankruptcy court noted that once the case was converted, CPPS could then proceed directly against the general partner to recover the deficiency on its secured claim.

Following oral argument, the bankruptcy court took the matter under submission. On September 6, 1996, the bankruptcy court issued an order converting the case to chapter 7. GDSP appeals.

## II. ISSUES

A. Whether the bankruptcy court abused its discretion in converting the case to chapter 7 pursuant to § 1112(b)(8) on the ground of an alleged material default in plan performance.

B. Whether the bankruptcy court erred in not closing the chapter 11 case under § 350(a).

## III. STANDARD OF REVIEW

The bankruptcy court is given wide discretion to convert a chapter 11 case to chapter 7 for cause, and an order for conversion is reviewed for an abuse of discretion. *In re Johnston*, 149 B.R. 158, 160 (9th Cir. BAP 1992). We review issues of statutory interpretation as questions of law reviewed *de novo*. *In re Sierra Pacific Broadcasters*, 185 B.R. 575, 577 (9th Cir.BAP1995).

## IV. DISCUSSION

A. *Whether The Bankruptcy Court Abused Its Discretion In Converting The Case To Chapter 7 Pursuant To § 1112(b)(8) On The Ground Of An Alleged Material Default In Plan Performance* [3]

1. *Section 1112(b)(8): material default in plan Performance*

Section 1112(b)(8) provides:

### § 1112. Conversion or dismissal

. . . .

(b) Except as provided in subsection (c) of this section, on request of a party in interest or the United States trustee or bankruptcy administrator, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for *cause*, including—

. . . .

(8) material default by the debtor with respect to a confirmed plan. (Emphasis added).

On appeal, GDSP argues that there was no material default under the plan. It asserts specifically that there could be no material default because there was a "substantial consummation" under the plan. We disagree. "Substantial consummation" of a

---

3. Preliminarily, we note that there appears to be a conflict of interest in the proceedings below and in this appeal between the general partner of GDSP, Xinos Enterprises Inc., and GDSP.

GDSP was initially represented by the law firm of Estes & Hoyt ("Estes"). However, at the order to show cause hearing, the it was still the counsel of record for GDSP. It appears from reading the transcript that at the time of the hearing, Estes had either withdrawn or had been disqualified as counsel for GDSP.

The transcript further reflects that Estes argued against conversion on behalf of the general partner and did not appear to represent the interests of GDSP. There was nothing in the transcript to indicate that Estes represented GDSP's interests and no statement was made concerning GDSP's position on conversion.

In this appeal, GDSP was represented by Williamson & Brown ("Brown"), rather than Estes. In the notice of appeal, Estes was listed as counsel for the general partner of GDSP and Brown was listed as GDSP's counsel.

Despite the fact that GDSP had obtained new counsel, it was obvious to this Panel at oral argument held on February 21, 1997 that a conflict existed between the general partner and GDSP concerning whether the chapter 11 case should be converted to chapter 7. The general partner opposed conversion in the proceedings below, and continued to do so in this appeal, because converting the case would allow CPPS to proceed pursuant to § 723 directly against the general partner and recover the deficiency on its secured claim. In contrast, GDSP had no reason to oppose conversion since it would not be adversely affected by the conversion.

Further, despite the retention of new counsel by GDSP to prosecute this appeal, it appears that GDSP's counsel continues to represent the general partner's interests rather than GDSP's interests. GDSP's counsel must represent the interests of GDSP rather than the interests of the general partner.

plan under § 1101 [4] is not at issue on appeal. Whether the plan has been "substantially consummated" is not determinative as to whether there has been a material default in the *performance* of the plan. If GDSP's argument were correct, there could never be a default under a plan after payments pursuant to the plan had merely been "commenced." This is clearly not the law.

When the property was foreclosed upon by the first trust deed holder, HomeFed Bank, the operation of GDSP's storage facility business and its ability to generate revenue to fund the plan terminated. As GDSP stated in its disclosure statement: "[t]he purpose of the plan is to provide for the payment of all creditors in full … either through the net cash flow realized from the continued operation of the debtor's business or by a sale of the real property." With the property already foreclosed upon, there were no other means for GDSP to generate revenue and maintain its payments under the plan.[5] additionally, there could be no sale of the property pursuant to the plan. Thus, the entire purpose of the chapter 11 plan could no longer be achieved.

▉▉ In *In re Citi–Toledo Partners,* 170 B.R. 602, 609 (Bankr.N.D.Ohio 1994), the bankruptcy court found that conversion is appropriate where there is no continuing rev-enue-generating activity in the best interests of creditors and the estate. *Id.* Further, if the bankruptcy trustee is able to pursue claims for the estate against the debtor's partners under § 723,[6] this fact strongly favors conversion. *Id.* The record in this case reflects that the bankruptcy court noted the existence of an unresolved matter in the case concerning the liability of the debtor's partners.

Therefore, we hold that the bankruptcy court did not abuse Its discretion in converting the chapter 11 case to a chapter 7 case where a material default in plan performance clearly existed due to GDSP's loss of its sole means of generating revenue to fund the plan.[7]

**B. Whether The Chapter 11 Case Should Have Been Closed Pursuant To § 350 Is Not Appropriate For Review By The Panel**

GDSP argues that the bankruptcy court erred when it failed to close the chapter 11 case pursuant to § 350 [8] on the ground that the bankruptcy court had an obligation to close the chapter 11 case because the chapter 11 case had been "fully administered." See Rule 3022.[9]

▉▉ In response, CPPS argues that "[n]either the bankruptcy court nor any par-

---

**4. § 1101. Definitions for this chapter**

. . . .
(2) "substantial consummation" means—
(A) transfer of all or substantially all of the property proposed by the plan to be transferred;
(B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
(C) commencement of distribution under the plan.

**5.** *See also In re Mobile Freezers. Inc.,* 146 B.R. 1000, 1005 (S.D.Ala.1992), *aff'd* 14 F.3d 57, *cert. denied,* 513 U.S. 807, 115 S.Ct. 55, 130 L.Ed.2d 14 (1994). In *Mobile Freezers,* the chapter 11 debtor sold property that was used to operate its business. The sale of the property was in direct violation of the provisions of the chapter 11 plan. By selling its property, the bankruptcy court found that the debtor no longer had the means to operate its business, and thus, the debtor materially breached the chapter 11 plan. *Id.*

**6.** Section 723 provides in pertinent part:

**§ 723. Rights of partnership trustee against general partners**
(a) If there is a deficiency of property of the estate to pay in full all claims which are allowed in a case under this chapter concerning a partnership and with respect to which a general partner of the partnership is personally liable, the trustee shall have a claim against such general partner to the extent that under applicable nonbankruptcy law such general partner is personally liable for such deficiency.

**7.** GDSP argues that the loss of the property was not a default under the plan. Even if we were to assume that GDSP were technically correct, the loss of the only means to accomplish the purpose of the plan would clearly be "cause" for conversion to chapter 7 pursuant to § 1112(b).

**8. § 350. Closing and reopening cases**

(a) After an estate is fully administered and the court has discharged the trustee, the court shall close the case.

**9. Rule 3022. Final Decree in Chapter 11 Reorganization Case.**

ty-in-interest filed, served or properly noticed any motion to close the case. As such, this appellate court is without jurisdiction to consider the 'closing of the case' issue because the matter was not properly raised to or decided by the bankruptcy · court...." We agree with CPPS that this issue is not properly before the Panel. We may only review matters that were properly raised and decided by the bankruptcy court. *In re NSB Film Corp.*, 167 B.R. 176, 180 (9th Cir. BAP 1994) ("Issues that are raised for the first time on appeal will not be considered.").

It appears that GDSP is under a mistaken impression regarding the significance of a case being closed. GDSP apparently believes that if it wins the race to have the case closed before a creditor or the court moves to convert the case, the court is without authority to convert the case. This is incorrect. Even if the case had been properly closed under § 350, the case could thereafter be reopened to convert the case to chapter 7. As stated above, if GDSP were correct that merely commencing payments should cause a case to be closed, without the ability to reopen the case, there could never be a default under § 1112(b). This would be an illogical result.

Further, this case cannot be closed as a "fully administered case" because unresolved matters concerning the estate remain to be decided. *Matter of Wade*, 991 F.2d 402, 407 n. 2 (7th Cir.1993) (explaining that a chapter 11 case is not fully administered if all motions, contested matters, and adversary proceedings have not been resolved), *cert. denied*, 510 U.S. 870, 114 S.Ct. 195, 126 L.Ed.2d 153 (1993). There is still the question of the debtor's partners' liability to CPPS which must be resolved under § 723.

Based on the record, the bankruptcy court acknowledged the existence of an unresolved matter concerning the partners' liability:

> After an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case.

10. Assuming *arguendo* that GDSP's chapter 11 case had been properly closed, this would not have prohibited the bankruptcy court from reopening the case pursuant to § 350(b). *See*

THE COURT: The plan is in default. The plan on page 1 proposed to pay, in full, with interest, all the secured/unsecured claims, proposed to pay, and I'll use the initials, CPPS, in five years. There is no language in the disclosure statement or the plan saying that this—the only rights of the creditors are to the property. There's no recourse language that I can find. The unsecured creditors haven't been paid. This is a partnership.

Under § 1112, if the plan goes into default, the case may be converted, the trustee may proceed against the partners, and that, as far as I can see, there's no bar against that from happening under § 723, whether it's preconfirmation or postconfirmation.

With the matter of the trustee's claims against GDSP's partners pursuant to § 723 still unresolved, this case has not been "fully administered." [10] In any event, as noted above, even if this case were "fully administered," we cannot review this issue because it was not properly raised to or decided by the bankruptcy court.

## V. CONCLUSION

The bankruptcy court did not abuse its discretion in converting the chapter 11 case to chapter 7 because there was a material default in plan performance. Further, the issue of whether the case should be closed because it was "fully administered" is not appropriate for review because this issue was not properly raised to or decided by the bankruptcy court. The order converting the chapter 11 case to chapter 7 is AFFIRMED.

*White v. Boston*, 104 B.R. 951, 954 n. 2 (S.D.Ind. 1989).

Section 350(b) provides:
**§ 350. Closing and reopening cases.**
. . . .
(b) A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.