Thomas **GRABER** and Hopkins
& Sutter, Petitioners,

v.

Richard L. **FUQUA**, Respondent.

No. 05–0303.

Supreme Court of Texas.

Argued Jan. 26, 2006.

Decided Jan. 9, 2009.

Rehearing Denied May 1, 2009.

James A. Baker, Robert H. Mow Jr., Kirkpatrick & Lockhart Preston Gates Ellis LLP, Jamie Lavergne Bryan, Hughes & Luce, L.L.P., Walter G. Pettey III, Little Pedersen Fankhauser LLP, Dallas, TX, Raymond L. Thomas, Kittleman, Thomas & Gonzalez, P.L.L.C., McAllen, TX, for Petitioner.

Richard Lee Fuqua II, Fuqua & Keim, Houston, TX, for Respondent.

Justice GREEN delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice HECHT, Justice O'NEILL, and Justice JOHNSON joined.

The question in this case is whether a state malicious prosecution claim is

preempted by the federal bankruptcy regime simply because the claim arose out of the filing of an adversary action in a bankruptcy proceeding. We hold that under the facts of this case, Congress did not intend for such a claim to be preempted.

In a Texas trial court, Richard Fuqua alleged that Thomas Graber and Hopkins & Sutter had committed the common law tort of malicious prosecution by initiating an adversary proceeding in Fuqua's federal bankruptcy case. The petitioners argue that federal bankruptcy statutes express Congress's intent to preempt Fuqua's claim and others like it. But to hold as the petitioners suggest would require us to extract the requisite intent from congressional *silence,* an inference that our preemption jurisprudence does not allow. The petitioners further argue that permitting Fuqua's state malicious prosecution claim would impermissibly threaten the uniformity of federal bankruptcy law. Yet we can identify no such risk. Until Congress clearly says otherwise, preemption of Fuqua's malicious prosecution claim is not warranted. Fuqua's suit should have survived Graber's plea to the jurisdiction.

## I

In 1988, Fuqua filed a voluntary Chapter 7 bankruptcy petition in federal bankruptcy court. Several months later, Graber and Hopkins & Sutter (collectively Graber) initiated an adversary proceeding against Fuqua on behalf of their client, Sunbelt Savings, F.S.B. Graber argued that Fuqua had conspired with others to defraud Sunbelt in a previous real estate transaction. According to Fuqua, Graber obtained information in the adversary proceeding and forwarded it to the Justice Department, resulting in a criminal investigation of Fuqua. The bankruptcy judge stayed the adversary proceeding during the investigation. Fuqua was indicted for bank fraud and tax fraud, the case went to trial, and Fuqua was found not guilty on all charges. After the completion of Fuqua's criminal trial, the adversary proceeding resumed. The bankruptcy court granted Fuqua's motion for a directed verdict and entered judgment in his favor. Graber, on behalf of Sunbelt, appealed the judgment to the federal district court, which dismissed the appeal in 1998. No further appeals were taken.

■ In 2000, Fuqua sued Graber alleging both a claim of civil malicious prosecution based on Graber's filing of the adversary proceeding and a claim of criminal malicious prosecution based on the later criminal indictment. With respect to the criminal malicious prosecution claim, the trial court granted summary judgment in favor of Graber because the statute of limitations had run. Fuqua did not appeal that order. With respect to the civil malicious prosecution claim, Graber filed a plea to the jurisdiction, arguing that the court lacked jurisdiction because federal bankruptcy law preempted Fuqua's claim. Without a response from Fuqua, the trial court granted Graber's plea. Fuqua appealed and the court of appeals reversed, rejecting Graber's argument for preemption and remanding the case to the trial court. 158 S.W.3d 635. We granted Graber's petition for review.

## II

■■ When Congress has not expressly commanded preemption, courts recognize two categories of implied preemption: (1) when Congress sufficiently evidences its intent to exclusively "occupy the field," and (2) when the state law conflicts with the federal law by making simultaneous compliance impossible or by creating an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. Nat'l Foreign Trade Council,* 530 U.S. 363, 372, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000); *accord*

*Great Dane Trailers, Inc. v. Estate of Wells*, 52 S.W.3d 737, 743 (Tex.2001). But because "the categories of preemption are not 'rigidly distinct,'" these semantic categories do not always control. *Crosby*, 530 U.S. at 372 n. 6, 120 S.Ct. 2288 (quoting *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 n. 5, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990)). "'The purpose of Congress is the ultimate touchstone' in every pre-emption case." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (quoting *Retail Clerks Int'l Ass'n, Local 1625 v. Schermerhorn*, 375 U.S. 96, 103, 84 S.Ct. 219, 11 L.Ed.2d 179 (1963)).

 Graber does not argue this case as one where the federal jurisdictional statutes have stripped state courts of jurisdiction. Unlike "cases under [the Bankruptcy Code]," over which federal courts possess exclusive jurisdiction, state and federal courts share concurrent jurisdiction over "all civil proceedings arising under [the Bankruptcy Code], or arising in or related to cases under [the Bankruptcy Code]." 28 U.S.C. § 1334(a)-(b). Indeed, a malicious prosecution claim predicated on conduct in an adversary proceeding does not fall within the federal courts' exclusive section 1334(a) jurisdiction. *See Wood v. Wood (In re Wood)*, 825 F.2d 90, 92 (5th Cir.1987) ("The [section 1334(a)] category refers merely to the bankruptcy petition itself, over which district courts (and their bankruptcy units) have original and exclusive jurisdiction."). Graber argues that the trial court lacks subject matter jurisdiction because federal law completely preempts the substance of Fuqua's malicious prosecution claim. No matter how categorized, Graber's argument for preemption is reducible to two propositions: (1) Congress intended to occupy the field of regulating abuses of the bankruptcy

process, and purposefully chose to exclude state malicious prosecution claims; and (2) state malicious prosecution claims will impermissibly disrupt the uniformity of bankruptcy law. We disagree with both.[1]

 In all preemption cases, our analysis must begin with a presumption that Congress did not preempt state law. *Great Dane Trailers*, 52 S.W.3d at 743; *see also Medtronic*, 518 U.S. at 485, 116 S.Ct. 2240 ("[B]ecause the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action."). The presumption applies not only to *whether* Congress preempted state law at all, but also to the *scope* of preemption. *Medtronic*, 518 U.S. at 485, 116 S.Ct. 2240; *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 523, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). As noted by the United States Supreme Court:

Under our constitutional system, there necessarily remains to the states, until Congress acts, a wide range for the permissible exercise of power appropriate to their territorial jurisdiction.... States are thus enabled to deal with local exigencies and to exert in the absence of conflict with federal legislation an essential protective power. And when Congress does exercise its paramount authority, it is obvious that Congress may determine how far its regulation shall go. There is no constitutional rule which compels Congress to occupy the whole field. Congress may circumscribe its regulation and occupy only a limited field. When it does so, state regulation outside that limited field and otherwise admissible is not forbidden or displaced. The principle is thoroughly established that the exercise by the

1. Because we conclude that federal law does not preempt Fuqua's claim, we express no opinion on the separate question of whether preemption would operate to deprive the trial court of subject matter jurisdiction.

state of its police power, which would be valid if not superseded by federal action, is superseded only where the repugnance or conflict is so direct and positive that the two acts cannot be reconciled or consistently stand together. *Kelly v. Wash. ex rel. Foss Co.,* 302 U.S. 1, 10–11, 58 S.Ct. 87, 82 L.Ed. 3 (1937) (internal quotations omitted). Thus, Congress's intent to preempt must be "clear and manifest" to overcome this presumption. *Bates v. Dow Agrosciences LLC,* 544 U.S. 431, 449, 125 S.Ct. 1788, 161 L.Ed.2d 687 (2005). Beginning with this presumption, we address Graber's two arguments.

### A

■ In general, federal law does not preempt a state malicious prosecution claim predicated on conduct occurring in standard federal civil actions. *See, e.g., U.S. Express Lines, Ltd. v. Higgins,* 281 F.3d 383, 388–94 (3d Cir.2002). But of course, the claim made in this case is not predicated on a normal suit—it is predicated on conduct occurring in bankruptcy. Thus, the determinative question here is simple: Did Congress intend to produce an exceptional preemption result when it enacted the Bankruptcy Code? Graber argues that the Bankruptcy Code's remedial scheme evidences Congress's intent to exclusively occupy the field of regulating abuses of the bankruptcy process. But as an initial matter, Graber frames the scope of our inquiry too broadly. The relevant inquiry is not whether Congress contemplated remedies for abuses of the bankruptcy process generally, for that kind of blanket analysis ignores relevant distinc-

tions between various bankruptcy processes, and it undervalues the presumption against preemption. Instead, we must determine the extent to which Congress contemplated remedies for abuse of a bankruptcy adversary proceeding, the particular action on which Fuqua based his malicious prosecution claim.[2]

Bankruptcy Code remedial provisions must be interpreted with reference to their source because Congress enacted the bankruptcy statutes according to two very different methods: some parts were essentially custom-built, others were not. In some places, Congress envisioned the need for unique processes without analogs in general federal litigation. For those areas, Congress created new processes for the specific purpose of bankruptcy. *See, e.g.,* 11 U.S.C. § 362 (2000) (automatic stay); *id.* § 301 (voluntary petitions); *id.* § 303 (involuntary petitions). But in many other places, Congress saw no need to treat bankruptcy any differently from general federal litigation. For those areas, Congress either imported existing federal rules or enacted almost identical provisions. *See, e.g.,* FED. R. BANKR.P. 7001–7087 (adversary proceeding rules). Bankruptcy remedies for abuse of process reflect this same dichotomy. When Congress created unique procedures, it simultaneously created unique remedial provisions. *See, e.g.,* 11 U.S.C. § 362(k)[3] (debtor's remedies for violation of automatic stay); *id.* § 303(i) (debtor's remedies for dismissed involuntary petitions). And when Congress merely imported general federal procedures, it simultaneously

**2.** The adversary proceeding deserves specific preemption analysis because it is a principal bankruptcy process, separate from the remainder of a bankruptcy case. *See generally* 9 AM.JUR.2D *Bankruptcy* §§ 22–24, 87, 706, 1229, 3782 (2006); 1 DANIEL R. COWANS, BANKRUPTCY LAW AND PRACTICE §§ 3.15, 3.18 (7th ed.1998).

**3.** The 2005 amendments to the Bankruptcy Code moved this provision from section 362(h) to section 362(k). Pub.L. No. 109–8, § 305(1)(B), (C), 119 Stat. 41 (2005). However, the substance is the same.

imported federal law's existing remedial schemes. *See* FED. R. BANKR.P. 9011 (mirroring Federal Rule of Civil Procedure 11); 1 COWANS, *supra*, § 3.15 ("The Bankruptcy Rules covering litigation were not made up specially for bankruptcy. They lean heavily upon the Federal Rules of Civil Procedure.").[4]

Therefore, the question of whether Congress intended to produce an exceptional preemption result when it enacted the Bankruptcy Code produces two answers. In the areas where Congress custom-built bankruptcy law, preemption is more likely because when Congress crafted new, unique provisions, it probably contemplated whether or not to exclude overlapping state law remedial schemes. But in the areas where Congress merely imported existing federal law without any significant change, preemption is improbable because such borrowing does not evidence an intent to change well-settled preemption law.

The issue in this case—remedies for abuse of an adversary proceeding—belongs to the latter category of imported remedial schemes. Graber and the dissent cite Federal Rule of Bankruptcy Procedure 9011 and Bankruptcy Code section 105(a) as evidence that Congress considered the need to remedy abuse of adversary proceedings and decided to exclude state actions for malicious prosecution. But the opposite is true. Congress said very little about remedies for abuse of an adversary proceeding, and what little it said in Rule 9011 and Section 105(a) represents an implicit acceptance of state malicious prosecution claims like Fuqua's.

Bankruptcy Rule 9011, like Federal Rule of Civil Procedure 11, addresses the signing of papers and representations to bankruptcy courts and provides standards for the imposition of sanctions upon both attorneys and parties. *See* FED. R. BANKR.P. 9011; FED.R.CIV.P. 11. Because Rule 9011 is almost identical to Rule 11, courts often merge their substantive analysis of the rules. *See, e.g., Citizens Bank & Trust Co. v. Case (In re Case)*, 937 F.2d 1014, 1022–23 (5th Cir.1991); *In re Commonwealth Sec. Corp.*, No. 06–30746–SGJ–7, 2007 WL 309942 (Bankr.N.D.Tex. Jan. 25, 2007). It is well settled that the Federal Rules of Civil Procedure, including Rule 11, do not preempt malicious prosecution claims predicated on federal civil actions. *See, e.g., U.S. Express Lines*, 281 F.3d at 393; *Cohen v. Lupo*, 927 F.2d 363, 365 (8th Cir.1991); *Tarkowski v. County of Lake*, 775 F.2d 173, 175 (7th Cir.1985); *McShares, Inc. v. Barry*, 266 Kan. 479, 970 P.2d 1005, 1014 (1998) ("Rule 11 can not abridge the substantive state law of malicious prosecution, nor was it adopted to serve as a surrogate for an action based upon a claim of malicious prosecution resulting from frivolous, harassing, or vexatious litigation."); *Del Rio v. Jetton*, 55 Cal.App.4th 30, 63 Cal.Rptr.2d 712, 716–17 (1997) ("Nothing in [R]ule 11 indicates an intent to occupy the entire field of groundless suits brought for malicious purpose, nor is there any conflict between Rule 11 and a damages action for such malicious prosecution."). As the Rule 11 advisory committee observed, "Rule 11 is not the exclusive source for control of improper presentations of claims, defenses, or contentions.... *Rule 11 does not preclude a party from initiating an independent action for malicious prosecution or abuse of process.*" FED.R.CIV.P. 11 advisory committee's note (emphasis added). Thus, the United States Supreme Court is "confident that district courts will resist the temptation to use [Rule 11] sanctions as substitutes for tort damages." *Bus. Guides, Inc.*

**4.** "In general, adversary proceedings are more formal and grow ever closer to the litigation mode in other federal courts." 1 COWANS, *supra*, § 3.15.

*v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 553, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991).

Despite the fact that Rule 9011 mirrors Rule 11, and that Rule 11 does not preempt malicious prosecutions in normal federal civil actions, Graber still argues that Rule 9011 is evidence of Congress's intent to preempt malicious prosecutions in bankruptcy. The argument must assume that by taking Rule 11—a generic rule of civil procedure that Congress did not intend to have preemptive power, and which the cases hold does not—and placing it in the bankruptcy context, Congress somehow clearly evidenced its intent to give an old rule new preemptive status. This cannot be the case when neither Rule 9011 nor the bankruptcy rules as a whole bear evidence of such a changed intent. Congress did not custom-build this part of bankruptcy law. Instead, the opposite is true—it intended to import the federal rules framework at large. As the Advisory Committee itself said:

> These [Adversary Proceedings] rules are based on the premise that to the extent possible practice before the bankruptcy courts and the district courts should be the same. These rules either incorporate or are adaptations of most of the Federal Rules of Civil Procedure.

FED. R. BANKR.P. 7001 advisory committee's note. Because Rule 11 does not preempt state malicious prosecution claims normally, and because Congress intended to replicate that framework in bankruptcy adversary proceedings, Rule 9011 does not evidence Congress's intent to preempt malicious prosecution claims. Its importation militates, instead, directly against preemption. *See Bates*, 544 U.S. at 449, 125 S.Ct. 1788 ("If Congress had intended to deprive injured parties of a long available form of compensation, it surely would have expressed that intent more clearly."); *Standard Oil Co. of N.J. v. United States*, 221 U.S. 1, 59, 31 S.Ct. 502, 55 L.Ed. 619 (1911) ("[W]here words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country, they are presumed to have been used in that sense unless the context compels to the contrary.").

Likewise, Bankruptcy Code section 105(a) does not evidence Congress's intent to preempt malicious prosecution claims predicated on conduct in an adversary proceeding. *See* 11 U.S.C. § 105(a). Section 105(a) is another example of where, instead of custom-building a bankruptcy rule, Congress imported general federal law that does not preempt, and said nothing to change that result. Section 105(a) is located in the "General Provisions" chapter of the current Bankruptcy Code. U.S.C., tit. 11, ch. 1. The substance of this section has existed since at least 1898. *See* Laura B. Bartell, *Contempt of the Bankruptcy Court—A New Look*, 1996 U. ILL. L.REV. 1, 3–4 & n.15 (1996).[5] The section gives bankruptcy courts broad, general police powers:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

The United States Supreme Court recognized in *Chambers v. NASCO, Inc.* that

---

**5.** The 1898 Act gave the power to "make such orders, issue such process, and enter such judgments in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this Act." Bartell, *supra,* at 4 n. 15.

federal courts hearing general civil actions possess this same power inherently. 501 U.S. 32, 43–46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). And like Bankruptcy Rule 9011, which Congress imported from federal procedural law at large, section 105(a) is also a direct import. *See Jones v. Bank of Santa Fe (In re Courtesy Inns, Ltd., Inc.),* 40 F.3d 1084, 1089 (10th Cir.1994) ("We believe, and hold, that § 105 intended to imbue the bankruptcy courts with the inherent power recognized by the Supreme Court in *Chambers*.") (citation omitted). The broad *Chambers* power does not preempt malicious prosecution claims in normal litigation, and the mere fact that Congress codified that power for bankruptcy cases did nothing to change its preemptive effect. For the same reasons that merely importing Rule 11 does not evidence Congress's intent to create an exceptional preemption result, importing the power recognized by *Chambers* does not either.

In addition to Rule 9011 and Section 105(a), Graber, the dissent, and cases like *MSR Exploration, Ltd. v. Meridian Oil, Inc.,* 74 F.3d 910, 915–916 (9th Cir.1996), cite various other Bankruptcy Code provisions in support of preemption. These provisions do not evidence the requisite intent because they address custom-built areas of bankruptcy law, not adversary proceedings, and because they fall far short of evidencing the intent to occupy the *entire field* of sanctions for abuse of adversary proceedings that preemption requires.

Bankruptcy Code section 303 governs the use of involuntary petitions—a unique procedure that allows a person to initiate bankruptcy proceedings without the debtor's consent. 11 U.S.C. § 303(a)—(b). If an involuntary petition is filed in good faith, but dismissed, section 303(i) allows the court to award costs and fees to the debtor. *Id.* § 303(i)(1). If an involuntary

petition is filed in bad faith and dismissed, section 303(i) allows the court to award costs, fees, and damages to the debtor. *Id.* § 303(i)(2). Graber and the dissent cite several cases holding that section 303(i) preempts malicious prosecution claims predicated on the filing of an involuntary petition. Indeed, the involuntary petition process is a custom-built area of bankruptcy that Congress crafted anew. *See Miles v. Okun (In re Miles),* 430 F.3d 1083, 1089–91 (9th Cir.2005). Thus, it is more likely that Congress considered the need to deter misuse of the unique involuntary petition process it created, and more likely that it intended section 303(i) to be the exclusive remedy. But the process of filing the initial bankruptcy petition is very different from an adversary proceeding. By its own terms, section 303(i) applies only to the filing of an involuntary petition—it cannot apply to the initiation of an adversary proceeding. *See* 11 U.S.C. § 303. Congress did not custom-build the adversary proceeding rules like it did the involuntary petition process. Instead, for purposes of adversary proceedings, Congress merely imported the existing federal scheme, which allows state malicious prosecution claims.

Bankruptcy Code section 362 establishes another custom-built procedure: bankruptcy's automatic stay, which halts almost all types of creditor's actions against the debtor or the debtor's property. 11 U.S.C. § 362. For willful violations of the automatic stay, section 362(k) mandates the recovery of actual damages in cases of good faith, and punitive damages in "appropriate circumstances." *Id.* § 362(k). Section 362(k) sanctions only violations of the unique automatic stay, conduct that occurs outside of the bankruptcy proceedings. Because the automatic stay is another custom-built area of bankruptcy, its sanctions are more likely to preempt related state claims. But this provision does

not evidence a preemptive intent related to adversary proceedings because the two areas—regulating the conduct of persons outside the proceeding and regulating the conduct of litigants inside an adversary proceeding—are so unrelated that an intent to preempt in one cannot evidence an intent to preempt the other.

Bankruptcy Code section 930 allows dismissal of a municipality's bankruptcy petition for "cause." *Id.* § 930. This section is not evidence that Congress considered individual remedies for misuse of the adversarial proceedings because this chapter applies to municipalities, not individual debtors' petitions. *See* U.S.C. tit. 11, ch. 9. In addition, section 930 never addresses the actions of outside parties like Graber; it looks only to the petitioning municipality. *See* 11 U.S.C. § 930.

Bankruptcy Code section 1112 governs dismissal of a Chapter 11 bankruptcy case, as well as conversion of a Chapter 11 case to another type of bankruptcy case. *Id.* § 1112. Section 1112 is not evidence that Congress considered remedies for misuse of the adversarial process because the dismissal/conversion triggers address the conduct of the bankruptcy petitioner and the well-being of the estate, not the conduct of outside parties like Graber. *See id.* § 1112(b)(4)(a)-(p).[6]

 The last provision Graber cites is 28 U.S.C. § 1927, which deals with an attorney's liability for excessive court costs.

This statute cannot support preemption of malicious prosecution claims in bankruptcy cases because it cannot be applied by bankruptcy courts. *See Courtesy Inns, Ltd.*, 40 F.3d at 1085–86 ("the bankruptcy court may not impose sanctions under § 1927") (citing *Perroton v. Gray (In re Perroton)*, 958 F.2d 889 (9th Cir.1992)).[7]

Thus, the only broad provisions that apply to adversary proceedings—Rule 9011 and section 105(a)—evidence not an intent to preempt, but rather an intent to preserve the existing framework of federal procedure that does not preempt state malicious prosecution claims. In light of the well-established general rule that federal law does not preempt malicious prosecution claims predicated on conduct in federal court, we are unable to find the requisite evidence of an intent to preempt these same claims in bankruptcy.

One final argument concerning Congress's statutory scheme deserves attention. Graber says that allowing malicious prosecution claims may change the incentives for participation in bankruptcy. As the argument goes, a creditor planning on bringing an involuntary proceeding might not do so if the state malicious prosecution claim is available to bankruptcy debtors.[8] Graber says that Congress contemplated the incentives for participation in bankruptcy, and that states ought not be able to alter the balance Congress struck by adding the risk of malicious prosecution.

---

**6.** The 2005 amendments to the Bankruptcy Code moved this provision from 1112(b)(1)-(10) section to section 1112(b)(4)(a)-(p). Pub.L. No. 109–8, § 442(a), 119 Stat. 115 (2005).

**7.** *But see* 1 Cowans, *supra*, § 3.16. If section 1927 could be applied, it would be analyzed like Rule 11 above, and would not support preemption. *See Fed.R.Civ.P.* 11 advisory committee's note (presuming that malicious prosecution claims will coexist with the imposition of section 1927 sanctions).

**8.** Even if litigants actually consider such possibilities, there is good reason to doubt that the addition of a potential malicious prosecution action would have any appreciable effect on their decision calculus, particularly in light of what Graber says is an existing comprehensive remedial scheme. We do not impute to Congress such a strained conclusion without clearer evidence.

This argument fails for the same reason that the Rule 9011 argument fails. The Federal Rules of Civil Procedure balance incentives and penalties for participation in general federal litigation, and malicious prosecution claims in that context present the same potential to alter litigants' decision-calculus. Yet Congress chose not to preempt the malicious prosecution claim in general federal litigation. To effectuate a change in this result for bankruptcy, Congress must speak more clearly than it has. For these reasons, Graber's claim that Congress intended to exclude malicious prosecution claims from the field of remedies for abuse of a bankruptcy adversary proceeding fails.

### B

▮▮▮▮ Graber next argues that preemption is warranted by the risk of disrupting uniformity in bankruptcy. We disagree for two reasons. First, we think the uniformity argument does not warrant preemption because Fuqua's lawsuit will not necessarily affect the law of bankruptcy, be it in Fuqua's particular case or in bankruptcy cases at large. By definition, Texas claims for malicious prosecution arise only after the underlying case reaches a final judgment and all appeals are exhausted. *See Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 208 (Tex.1996) ("[A]n underlying civil suit has not terminated in favor of a malicious prosecution plaintiff until the appeals process for that

underlying suit has been exhausted.").[9] When Fuqua filed his malicious prosecution claim in state court, the bankruptcy court controversy between Graber and Fuqua had reached a final, undisturbable result. A judgment had been entered in the adversary proceeding in favor of Fuqua, the judgment had been appealed, the appeal had been dismissed, and the time for filing any further appeals had expired. *See* FED. R. BANKR.P. 9021–24 (providing final judgment rules); 28 U.S.C. § 158 (providing for federal district court jurisdiction over appeals from bankruptcy court final judgments); *Smith v. Seaside Lanes (In re Moody)*, 825 F.2d 81, 85 (5th Cir. 1987) ("[I]t is generally held that a separate adversary proceeding within the framework of the overall bankruptcy case is an appropriate 'judicial unit' for determining finality.... Thus, even though the bankruptcy case may continue, an order disposing of such a proceeding is appealable as a final order."). Therefore, nothing occurring in the malicious prosecution claim could disturb the matters already decided in Fuqua's adversary proceeding.[10]

Nor can it be said that the adjudication of Fuqua's malicious prosecution claim will affect federal bankruptcy law at large. The element of a malicious prosecution claim that most concerns preemption cases is probable cause, which Graber says might require state courts to interpret federal law. As the argument goes, a state

---

9. In Texas, "[t]o prevail in a suit alleging malicious prosecution of a civil claim, the plaintiff must establish: (1) the institution or continuation of civil proceedings against the plaintiff; (2) by or at the insistence of the defendant; (3) malice in the commencement of the proceeding; (4) lack of probable cause for the proceeding; (5) termination of the proceeding in plaintiff's favor; and (6) special damages." *Tex. Beef Cattle*, 921 S.W.2d at 207.

10. The dissent argues that the bankruptcy court has issued no final order closing Fuqua's Chapter 7 case and that, therefore, Fuqua could still petition the bankruptcy court for remedies. Even if this was the case, there is no question that the adversary proceeding, which is the basis of the malicious prosecution claim, has closed and that the time for an appeal has expired. Further, Fuqua's claim is not preempted simply because some remedies may be available in federal court. *See Del Rio*, 63 Cal.Rptr.2d at 717; *McShares*, 970 P.2d at 1016.

court can never determine whether there was probable cause to bring an adversary proceeding without impermissibly interpreting federal bankruptcy law. But this is not always the case because state courts can determine that an adversary proceeding was brought without probable cause by interpreting *only state law*. Fuqua's situation illustrates this.

 Graber's adversary proceeding alleged that Fuqua committed acts of fraud in a financial transaction. In bankruptcy adversary proceedings, "[t]he validity of a creditor's claim is determined by rules of state law," *Grogan v. Garner*, 498 U.S. 279, 283–84, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991),[11] while issues like dischargeability are determined by the Bankruptcy Code. *Id.* at 284, 111 S.Ct. 654. Thus, bankruptcy courts first determine whether a claimed act constitutes fraud *under state law*, and if so, they then determine how that act affects dischargeability under federal law. *Id.* at 284 n. 10, 111 S.Ct. 654. Suppose Graber made the following assertions in the adversary proceeding:

> Adversary Proceeding Claim Part 1: Under Texas law, Fuqua committed an act of fraud.

> Adversary Proceeding Claim Part 2: Because of that fraud, federal law requires that Fuqua's bankruptcy debt not

be discharged in manner X for reasons A, B, and C.

To succeed in a later action for malicious prosecution, Fuqua might try to prove there was no probable cause as to Claim Part 2 concerning dischargeability. In that case, the state court would be interpreting federal law. But Fuqua could also win the probable cause element of his state action for malicious prosecution by arguing only the state law elements of Graber's adversary proceeding claim. Fuqua's argument in such a case would look like this:

> Malicious Prosecution Claim Part 1: I concede Adversary Proceeding Claim Part 2—that if there was an act of state fraud, everything Graber says about federal bankruptcy law is correct.

> Malicious Prosecution Claim Part 2: But nonetheless, the adversary proceeding claim was malicious because there was *no probable cause for the predicate state law fraud allegation.*

In the above example, the state court would need only determine if Graber had probable cause as to the act of fraud under state law; it would not have to interpret federal law to adjudicate the malicious prosecution claim. In those kinds of circumstances, state courts could not affect the uniformity of bankruptcy laws. Instead, the state law of fraud would continue to control Fuqua and Graber's fate, both in the bankruptcy proceeding and in

---

**11.** The United States Supreme Court recently reiterated the important role of state substantive law in bankruptcy:

> Indeed, we have long recognized that the basic federal rule in bankruptcy is that state law governs the substance of claims, Congress having generally left the determination of property rights in the assets of a bankrupt's estate to state law. Accordingly, when the Bankruptcy Code uses the word "claim"—which the Code itself defines as a right to payment—it is usually referring to a right to payment recognized under state law. As we stated in *Butner,* [p]roperty

interests are created and defined by state law, and [u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.

*Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.,* 549 U.S. 443, 451, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007) (citations and internal quotations omitted). *Cf. Chapman v. Currie Motors, Inc.,* 65 F.3d 78 (7th Cir.1995) (discussing federal jurisdiction over "an adversary proceeding based ... solely on state law").

the malicious prosecution proceeding. Thus, Fuqua could litigate this suit without ever arguing a matter of federal law. We see no threat to uniformity in that situation.[12]

The second reason that preemption is not warranted by the risk of disrupting uniformity in bankruptcy is more fundamental: The uniformity argument for preemption is not triggered by the mere fact that a claim requires state courts to interpret federal bankruptcy law. It is true that, "[p]ursuant to Art. I, § 8, cl. 4, of the Constitution, Congress has power to enact bankruptcy laws that are uniform throughout the United States," *Ry. Labor Executives' Ass'n v. Gibbons*, 455 U.S. 457, 469, 102 S.Ct. 1169, 71 L.Ed.2d 335 (1982), and that in many places Congress has effectively expressed its intention to exclude states from the business of interpreting bankruptcy law. *See* 28 U.S.C. § 1334(a) (providing for exclusive federal jurisdiction for "cases under [the Bankruptcy Code]"); *Yaquinto v. Segerstrom (In re Segerstrom)*, 247 F.3d 218, 223–24 (5th Cir.2001) ("It has long been established that federal bankruptcy law determines the scope of a debtor's bankruptcy estate." (citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204–205, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983))). However, the mere existence of Congress's power to enact uniform bankruptcy laws does not require that Congress actually exercise the power to abolish by preemption all disparate state laws affecting bankruptcy. *See Gibbons*, 455 U.S. at 469, 102 S.Ct. 1169. "A bankruptcy law may be uniform and yet 'may recognize the laws of the State in certain particulars, although such recognition may lead to different results in different States.'" *Id.* (quoting *Stellwagen v. Clum*, 245 U.S. 605, 613, 38 S.Ct. 215, 62 L.Ed. 507 (1918)). It is precisely because "[b]ankruptcy legislation is superimposed on rights and obligations created by the laws of the States," *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 170, 67 S.Ct. 237, 91 L.Ed. 162 (1946) (Frankfurter, J., concurring), that "uniformity does not require the elimination of any differences among the States." *Gibbons*, 455 U.S. at 469, 102 S.Ct. 1169 (citing *Vanston*, 329 U.S. at 170, 67 S.Ct. 237 (Frankfurter, J., concurring)). As one court put it, "because the common law of the various states provides much of the legal framework for the operation of the bankruptcy system, it cannot be said that Congress has completely preempted all state regulation which may affect the actions of parties in bankruptcy court." *Miles*, 430 F.3d at 1092; *see also California v. ARC Am. Corp.*, 490 U.S. 93, 105, 109 S.Ct. 1661, 104 L.Ed.2d 86 (1989) ("Ordinarily, state causes of action are not preempted solely because they impose liability over and above that authorized by federal law...."); 1 COWANS, *supra*, § 3.2(b) ("[N]ot all state laws which undertake to regulate the debtor-creditor relationship are nullified."). There is no more reason to question a state court's aptitude at applying federal law now than there has been for the last two hundred years. *Cf. Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) 304, 340, 4 L.Ed. 97 (1816) ("[T]he framers of the constitution did contemplate that cases within the judicial cognizance of the United States not only might but would arise in the state courts, in the exercise of

---

12. While Fuqua might later raise an issue of federal law, he has not done so yet, and because his pleadings do not "affirmatively negate the existence of jurisdiction," the trial court was required to deny the plea to the jurisdiction. *See County of Cameron v.* *Brown*, 80 S.W.3d 549, 555 (Tex.2002). Thus, even under a standard that required total avoidance of federal law, Fuqua's claim should have survived the plea to the jurisdiction.

their ordinary jurisdiction."); *see also Claflin v. Houseman,* 93 U.S. 130, 142–43, 23 L.Ed. 833 (1876). Because Congress has yet to actually exercise its power to unify this aspect of bankruptcy and suppress the disparate state laws of malicious prosecution, the uniformity argument does not warrant preemption.

## III

We are not convinced that the Bankruptcy Code evidences Congress's intent to preempt Fuqua's malicious prosecution claim, and we are not convinced that entertaining Fuqua's malicious prosecution claim will impermissibly interfere with the federal interest in uniform bankruptcy laws. Graber's preemption argument simply fails to fulfill the requirements of any recognized category of preemption. Congress did not specifically express an intent to preempt Fuqua's claim, and it did not create a statutory scheme that impliedly requires as much. Allowing Fuqua's claim to proceed in Texas courts neither conflicts with the federal laws that were expressed, nor does it hinder the advancement of the policies embodied therein. Because Congress was silent on the matter, we see no reason to discontinue state law's historic function of providing common law remedies for misconduct in federal courts. To be sure, "it is often a perplexing question whether Congress has precluded state action or by the choice of selective regulatory measures has left the police power of the States undisturbed except as the state and federal regulations collide," *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230–231, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947), and this case is no exception.[13] When faced with such a difficult case, we must err in favor of the states. We affirm the judgment of the court of appeals.

Justice WAINWRIGHT filed a dissenting opinion, in which Justice BRISTER, Justice MEDINA, and Justice WILLETT joined.

Justice WAINWRIGHT, joined by Justice BRISTER, Justice MEDINA, and Justice WILLETT dissenting.

The question posed is whether federal or state law should provide the remedy to a debtor allegedly sued wrongfully in an adversary proceeding in bankruptcy court. The predicate conduct for the adversary proceeding occurred prior to the debtor's filing of the bankruptcy petition, and all of the alleged wrongful conduct occurred in the bankruptcy proceeding. The Court holds that on these facts the debtor may pursue a Texas common law malicious prosecution claim in state court for harm allegedly caused during federal bankruptcy proceedings. Because federal law occu-

13. Contrary to Graber's suggestion, very few courts have addressed the particular issue confronting the Court today. The vast majority of cases cited by Graber involve involuntary petitions or automatic stays, not adversary proceedings. No matter what these cases say about the custom-built areas of bankruptcy, they do not control our analysis of preemption in the adversary proceeding context. At least two courts generally oppose preemption of malicious prosecution claims predicated on conduct in bankruptcy. *Paradise Hotel Corp. v. Bank of N.S.,* 842 F.2d 47 (3d Cir.1988); *R.L. LaRoche, Inc. v. Barnett Bank of S. Fla., N.A.,* 661 So.2d 855 (Fla.Dist. Ct.App.1995). While some jurisdictions hold that bankruptcy statutes preempt malicious prosecution claims predicated on the bringing of an adversary proceeding, *see, e.g., MSR Exploration,* 74 F.3d 910 (9th Cir.1996); *Glannon v. Garrett & Assocs., Inc.,* 261 B.R. 259 (D.Kan.2001); *Koffman v. Osteoimplant Tech., Inc.,* 182 B.R. 115 (D.Md.1995); *Lewis v. Chelsea G. C.A. Realty P'ship,* 86 Conn.App. 596, 862 A.2d 368 (Conn.App.Ct.2004); *Ross v. Universal Studios Credit Union,* 95 Cal. App.4th 537, 115 Cal.Rptr.2d 712 (Cal.Ct. App.2002); *Idell v. Goodman,* 224 Cal.App.3d 262, 273 Cal.Rptr. 605 (Cal.Ct.App.1990), the opinions of those jurisdictions do not bind us; nor do the arguments that they have accepted persuade us.

pies the field of bankruptcy, and Congress created an analogue in the Bankruptcy Code to malicious prosecution of an involuntary Chapter 11 bankruptcy, but not for the voluntary Chapter 7 bankruptcy at issue here, I would not create a new claim for abuses in Chapter 7 bankruptcies that Congress saw fit not to create. Debtors have adequate recourse for abuse of the bankruptcy process in the Bankruptcy Code and Rules.

I am also concerned that the Court's holding undermines the uniformity mandated for bankruptcy law by the United States Constitution, as under the Court's rationale all fifty states could overlay their state remedies on the bankruptcy proceedings and multiply the controversy for years beyond the controlled confines of the federal bankruptcy process. I therefore respectfully dissent.

## I. Background

In 1988, Richard L. Fuqua, an attorney, filed a voluntary bankruptcy petition under Chapter 7 in the Bankruptcy Court for the Southern District of Texas, McAllen Division. A year later, Thomas Graber and the law firm in which he is a partner, Hopkins & Sutter (referred to collectively as Graber), filed an adversary action in the bankruptcy proceeding on behalf of Sunbelt Savings (Sunbelt) alleging that Fuqua conspired with a client, Richard Aubin, and others to defraud Sunbelt in a pre-petition real estate transaction. Fuqua alleges that during discovery in the adversary proceeding, Graber provided false and intentionally misleading information about him and caused a criminal referral to be made to the United States Department of Justice regarding Fuqua's involvement in the real estate transaction.

The Department of Justice intervened in the adversary proceeding, and the bankruptcy judge stayed the proceeding during the criminal investigation. The investiga-

tion resulted in the indictment of Fuqua and Aubin for bank and tax fraud in 1992. In 1993, the bankruptcy court discharged Fuqua's debts, but the adversary proceeding remained pending in the bankruptcy court. After a 1994 trial in the U.S. District Court for the Northern District of Texas, Fuqua was acquitted of criminal wrongdoing. The civil adversary proceeding resumed upon resolution of the criminal trial. After a three-day trial in 1996, the bankruptcy court granted a directed verdict in favor of Fuqua. The bankruptcy court entered judgment against Sunbelt on May 13, 1997. The U.S. District Court of the Southern District of Texas dismissed Sunbelt's appeal of the bankruptcy judgment on September 8, 1998, and there was no appeal of that dismissal.

On September 7, 2000, Fuqua filed this state malicious prosecution action in the 93rd District Court of Hidalgo County, Texas. Fuqua alleged that Graber "knowingly, maliciously, and wantonly acted without probable cause in initiating or procuring the civil adversary proceeding, as well as the criminal proceeding, against Fuqua." The district court granted Graber's motion for partial summary judgment dismissing the criminal malicious prosecution claim based on the statute of limitations. In his third amended answer, Graber filed a plea to the jurisdiction, arguing that the district court lacked subject matter jurisdiction to hear Fuqua's civil malicious prosecution claim because the claim was preempted by federal bankruptcy law. The district court granted Graber's plea to the jurisdiction and dismissed the suit on November 25, 2002. Fuqua appealed.

The court of appeals held that Fuqua's malicious prosecution claim did not interfere with the bankruptcy court's jurisdiction, and therefore, the state court maintained concurrent jurisdiction unless it was

preempted by the Bankruptcy Code. 158 S.W.3d 635, 646. On the latter point, the court of appeals determined that there was no express preemption language in the Bankruptcy Code and that state jurisdiction was not preempted by federal bankruptcy law. *Id.* Accordingly, the court of appeals reversed and remanded the case for trial. *Id.* at 647.

## II. Parties' Arguments

Graber argues the court of appeals erred in holding that Fuqua's malicious prosecution claim was not preempted, complaining that even the court of appeals itself twice recognized that "a majority of courts that have considered the preemptive nature of bankruptcy law in the context of state tort claims alleging violations of the bankruptcy process have found such claims to be preempted." *Id.* at 641, 643–44. According to Graber, federal law preempts Fuqua's claim because section 105 of the Bankruptcy Code and rule 9011 of the Federal Rules of Bankruptcy Procedure provide the only remedies for abuse of the bankruptcy process. Allowing such claims in state court, Graber adds, would undermine the uniformity, free access, and finality Congress intended in the bankruptcy process.

Fuqua counters that Congress did not intend federal bankruptcy law to preempt his state malicious prosecution claim.[1] He points to a state court's concurrent jurisdiction over claims that do not affect distribution of the debtor's assets. He adds that section 105 and rule 9011 cannot occupy the field of malicious prosecution because they only provide sanctions, not damages, for abuse of the bankruptcy process. Fuqua further argues that under Graber's reasoning, Fuqua is without a remedy for his damages because a malicious prosecution cause of action does not accrue until the appeals process for the underlying suit has been exhausted. Fuqua admits that he did not seek sanctions or any other remedy in the bankruptcy court for the alleged abuse of process, but maintains he could not have pursued a claim against petitioners in bankruptcy court because Sunbelt's appeal of the adversary proceeding was not dismissed until September 8, 1998, ten years after he filed his bankruptcy petition and five years after his debts were discharged. The record, however, contains no indication that the bankruptcy court issued a final order, and no evidence was presented that the clerk closed the bankruptcy proceeding.

## III. Federal Preemption of State Law

Federal preemption of state law is grounded in the Supremacy Clause of the United States Constitution: "the Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2. Under the Supremacy

---

1. The elements to prove a malicious criminal prosecution are: (1) a criminal prosecution commenced against the plaintiff, (2) the defendant initiated or procured that prosecution, (3) the prosecution terminated in the plaintiff's favor, (4) the plaintiff was innocent of the charges, (5) the defendant lacked probable cause to initiate the prosecution, (6) the defendant acted with malice, and (7) the plaintiff suffered damages. *Kroger Tex. Ltd. P'ship v. Suberu,* 216 S.W.3d 788, 792 n. 3 (Tex.2006).

The elements to prove the malicious prosecution of a civil claim are: (1) the institution or continuation of civil proceedings against the plaintiff, (2) by or at the insistence of the defendant, (3) malice in the commencement of the proceeding, (4) lack of probable cause for the proceeding, (5) termination of the proceeding in the plaintiff's favor, and (6) special damages. *Tex. Beef Cattle Co. v. Green,* 921 S.W.2d 203, 207 (Tex.1996).

Clause, if state law conflicts with federal law, the state law is preempted and "without effect." *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981). The parties do not argue that federal law preempts state law expressly in this case. 158 S.W.3d at 639. *See Great Dane Trailers, Inc. v. Estate of Wells,* 52 S.W.3d 737, 743 (Tex.2001). Graber asserts that federal bankruptcy law impliedly preempts state law, either (1) because the scheme of federal regulation is sufficiently comprehensive to support a reasonable inference that Congress left no room for supplementary state regulation (field preemption), or (2) because the state law actually conflicts with federal remedies (conflict preemption). *See id.*

"The purpose of Congress is the ultimate touchstone" in every preemption case. *Retail Clerks Int'l Ass'n v. Schermerhorn,* 375 U.S. 96, 103, 84 S.Ct. 219, 11 L.Ed.2d 179 (1963). Accordingly, to discern whether Congress manifested a clear intent to preempt state claims arising from abuse of the bankruptcy process, we consider the statute's language and structure, the context of its enactment, and the purpose of the statute as a whole as revealed through our "reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law." *Worthy v. Collagen Corp.,* 967 S.W.2d 360, 367 (Tex.1998) (quoting *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485–86, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996)).

## IV. Federal Law Occupies the Field of Bankruptcy and Preempts State Law.

The U.S. Constitution gives Congress alone the power "[t]o establish ... uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const. art. I, § 8, cl. 4. Congress passed the Bankruptcy Act of 1898 to govern bankruptcies, then overhauled and codified those statutes in 1978, and has since superceded much of the Bankruptcy Code of 1978 in the 1984 and 1986 amendments to the Code. Manuel D. Leal, *The Power of the Bankruptcy Court: Section 105,* 29 S. Tex. L.Rev. 487, 492 (1988). Congress granted jurisdiction over bankruptcy matters to the federal courts by sections 157 and 1334 of title 28 of the United States Code. *Celotex Corp. v. Edwards,* 514 U.S. 300, 307, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995). This jurisdiction is exercised in the first instance by bankruptcy courts, which are divisions of federal district courts. *See Cox v. Zale Del., Inc.,* 239 F.3d 910, 917 (7th Cir.2001).

Filing a bankruptcy petition vests broad and exclusive jurisdiction over the property of the debtor and his estate in the district court, and hence the bankruptcy court. *In re Garnett,* 303 B.R. 274, 277 (E.D.N.Y.2003). Section 541(a)(1) defines the property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "This definition is unquestionably broad, its main purpose being to 'bring anything of value that the debtors have into the [bankruptcy] estate.'" *Lyon v. Eiseman (In re Forbes),* 372 B.R. 321, 330–31 (6th Cir. BAP 2007) (alteration in original) (citing *Booth v. Vaughan (In re Booth),* 260 B.R. 281, 284–85 (6th Cir.BAP 2001)). These broad powers extend to both a debtor's estate and all transfers made within two years before the filing of the bankruptcy petition. *See* 11 U.S.C. §§ 541, 548(a)(1). All legal proceedings against the debtor or his estate are automatically stayed and subjugated to the bankruptcy proceeding. 11 U.S.C. § 362. The disposition of the debtor's property is governed by federal law, although a debtor's property interests are generally "created and defined by state law" unless a federal purpose requires otherwise. *Lyon,* 372 B.R. at 331

(citing *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)).

In the absence of explicit preemptive language, Congress's intent to supersede state law fully may be inferred when the scheme of federal regulation is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," when the Act of Congress "touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject," or when "the object sought to be obtained by federal law and the character of the obligations imposed by it may reveal the same purpose." *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152–53, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982) (citations omitted). This form of preemption is a federal defense to state law claims and implicates choice of law rather than choice of forum.[2] *See Int'l Longshoremen's Ass'n v. Davis*, 476 U.S. 380, 391, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986). Graber argues federal bankruptcy law impliedly preempts Fuqua's claims because the state law purports to regulate conduct "in a field that Congress intended the Federal Government to occupy exclusively," *English v. Gen. Elec. Co.*, 496 U.S. 72, 79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990), and because the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941).[3] The federal interest in and control of bankruptcy may truly be said to have completely "occupied the field."[4]

## A. Congress Authorized the Award of Actual and Punitive Damages, Attorneys' Fees, and Costs to Parties, as Appropriate, for Violation of Bankruptcy Statutes and Rules and Malicious Prosecution in Bankruptcy Proceedings.

Fuqua concedes that an action based on a frivolous or groundless claim could be preempted by the Bankruptcy Code and Rules, but he contends the remedial scheme of the Bankruptcy Code and Rules is inapposite to the purpose and remedies of a malicious prosecution claim. Graber argues Congress intended to supercede state law in this field by designing adequate remedies in section 105 and rule 9011 to deter abuse of the bankruptcy process. Fuqua also concedes that section 105 grants the bankruptcy court broad equitable powers, but urges that the section does not sufficiently address malicious prosecution. According to Fuqua, rule 9011 only addresses frivolous or groundless claims and mirrors Federal Rule of Civil Procedure 11, which has been held not to preempt state law actions for malicious prosecutions in federal court. *See*

---

2. Under our pleading rules, Graber's assertion of preemption as a plea to the jurisdiction was sufficient to apprise Fuqua of the character of proof he would need to address the preemption issue, whether it be defensive or jurisdictional in nature. Tex.R. Civ. P. 94. *See Gorman v. Life Ins. Co. of N. Am.*, 811 S.W.2d 542, 546 n. 8 (Tex.1991).

3. Congress has accommodated state police power to a limited degree in bankruptcy proceedings. For example, known as the "police power" exception to the automatic stay, the Bankruptcy Code states that filing a petition does not operate as a stay of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police and regulatory power, other than enforcement of a money judgment. 11 U.S.C. § 362(b)(4).

4. The Court's indication that federal preemption of state law cannot be based on the absence of explicit preemption language in federal law (called "congressional silence") is curious. *See* 279 S.W.3d 610. Both the field and conflict preemption doctrines take effect only when such silence exists.

*U.S. Express Lines, Ltd. v. Higgins,* 281 F.3d 383, 392–93 (3d Cir.2002).

The authority bestowed on bankruptcy courts by federal law arms them with a broad array of remedies to regulate the conduct of parties, issue injunctive relief, and award sanctions and damages for maliciously initiating proceedings. The Bankruptcy Code "provides a comprehensive federal system of penalties and protections to govern the orderly conduct of debtors' affairs and creditors' rights." *E. Equip. & Servs. Corp. v. Factory Point Nat'l Bank,* 236 F.3d 117, 120 (2d Cir.2001). Other courts have concluded that this comprehensive system overrides state law claims for this type of abuse of the bankruptcy process.

"A debtor who believes a filing in bankruptcy is frivolous or a violation of the automatic stay occurred has a comprehensive scheme of remedies available in the federal courts. The existence of this comprehensive scheme precludes collateral attacks on such filings in state courts." *Glannon v. Garrett & Assocs., Inc.,* 261 B.R. 259, 264 (D.Kan.2001) (quoted in *Greene v. Young,* 174 S.W.3d 291, 302 n. 7 (Tex.App.–Houston [1st Dist.] 2005, pet. denied)). Sections 105(a) and 362(k) and rule 9011 provide effective remedies under federal law and authority for bankruptcy courts to enjoin violations of law and to award damages to debtors harmed by bad faith and abusive conduct in bankruptcy proceedings. 11 U.S.C. §§ 105(a), 362(k); FED. R. BANKR.P. 9011(b)-(c).

Section 105(a) empowers bankruptcy courts.

*The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.* No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination nec-

essary or appropriate to enforce or implement court orders or rules, or *to prevent an abuse of process.*

11 U.S.C. § 105(a) (emphasis added). Section 105 gave the bankruptcy courts "broad equitable powers to exercise [their] jurisdiction any time there is a threat to the successful rehabilitation of the estate." Manuel D. Leal, *The Power of the Bankruptcy Court: Section 105,* 29 S. TEX. L.REV. 487, 497 (1988) (citing *In re Stuart Glass & Mirror, Inc.,* 71 B.R. 332, 335 (Bankr.S.D.Fla.1987)). The last phrase— "to prevent an abuse of process"-was added in 1986 to affirm that bankruptcy courts may take any action on their own and make any necessary determination to prevent an abuse of process and expedite bankruptcy cases. *Id.* at n. 219 (citing Senator Orrin Hatch who apparently made the only statement in legislative history concerning the amendment). Under section 105(a), the court may raise the issue of good faith in considering motions of the parties. *Little Creek Dev. Co. v. Commonwealth Mortg. Corp. (In re Little Creek Dev. Co.),* 779 F.2d 1068, 1071 n. 1 (5th Cir.1986).

Under section 362(k), any individual injured by a willful violation of a stay "shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k) (stating further that a good faith belief limits recovery to actual damages). Although this case does not concern violation of a bankruptcy stay, this section clearly shows that Congress considered the award of actual and punitive damages, in addition to fees and costs, and authorized ordering those awards as appropriate.

Rule 9011, analogous to Fed.R.Civ.P. 11, empowers bankruptcy courts to impose "an appropriate sanction upon the attorneys, law firms, or parties" that have pre-

sented to the court pleadings, motions, or "other paper" containing allegations, factual contentions, or claims and defenses that generally have no evidentiary support and are not warranted by existing law.[5] Rule 9011 authorizes the award of reasonable expenses and attorneys' fees, monetary sanctions, or a penalty to the court. FED. R. BANKR.P. 9011(c).

Fuqua asserts that "any sanctions ordered may be payable *solely* to the court and not the party subjected to the frivolous or groundless claim" (emphasis added). He argues this as another reason bankruptcy statutes and rules need to be supplemented by state law to provide recourse to debtors for harm caused them in bankruptcy adversary proceedings. This is incorrect, as the rule authorizes awards of sanctions and damages to parties in the proceeding. Rule 9011(c) expressly states that the court "may award *to the party prevailing* on the motion" reasonable expenses and attorneys' fees. FED. R. BANKR.P. 9011(c)(1)(A) (emphasis added). It also authorizes orders "directing payment *to the movant* of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." *Id.* (c)(2) (emphasis added).

Fuqua's assertion that section 105 does not provide recovery of damages for maliciously bringing proceedings in bankruptcy is likewise off the mark. A number of courts have affirmed that section 105, although widely used for injunctive relief, authorizes the award of "any type of order, whether injunctive, compensative or puni-

---

**5.** Rule 9011 provides sanctions for frivolous and harassing filings:

(b) Representations to the Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the *extension, modification, or reversal* of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

(1) How Initiated

(A) By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b) ... If warranted, the court may award to the party prevailing on the motions the reasonable expenses and attorney's fees incurred in presenting or opposing the motion.

* * *

(2) Nature of Sanction: Limitations. A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated ... [t]he sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

FED. R. BANKR.P. 9011(b)-(c).

tive, as long as it is 'necessary or appropriate to carry out the provisions'" of the Bankruptcy Code. *Hardy v. U.S. (In re Hardy)*, 97 F.3d 1384, 1389 (11th Cir.1996) (citing 11 U.S.C. § 105(a)). *See also McTyeire v. Hunt (In re McTyeire)*, 357 B.R. 898, 903 (Bankr.M.D.Ga.2006). Section 105 authorizes a bankruptcy court to order payment of actual and punitive damages as well as attorneys' fees and costs. *Manion v. Providian Nat'l Bank*, 269 B.R. 232, 241–42 (D.Colo.2001) (affirming the bankruptcy court's order requiring a holder of void deeds of trust to pay actual damages and attorneys' fees in an adversary proceeding); *Moratzka v. Visa U.S.A. (In re Calstar, Inc.)*, 159 B.R. 247, 261 (Bankr.D.Minn.1993) (awarding money damages for a violation of the automatic stay and stating that punitive damages, although generally available under section 105, were not warranted in the case). Leal, 29 S. TEX. L.REV. at 496.

Section 303(i) also provides a close analogue to a Texas common law malicious prosecution claim, authorizing awards to debtors for reasonable attorneys' fees, costs, and actual or punitive damages when the court dismisses an involuntary petition. 11 U.S.C. § 303(i). Although section 303(i) only applies to involuntary cases, it once again affirms that Congress recognized the wide panoply of available remedies for abuse of process and then associated sanctions and awards with selected violations of the Code and the Rules. Congress provided sanctions for certain violations of Bankruptcy Code provisions, injunctive relief for some, actual damages for others, and punitive damages for a few. The provisions implicated by a debtor's claim of malicious prosecution, section 105 and rule 9011, both provide sanctions and damages upon proper proof.

Because Congress has provided a comparable, if not exact, counterpart in federal bankruptcy law to Fuqua's sought-after remedies, his argument that recoveries in bankruptcy law are woefully inadequate loses considerable steam. The existence of the remedial provisions cited "suggests that Congress has considered the need to deter misuse of the process and has not merely overlooked the creation of additional deterrents." *MSR Exploration*, 74 F.3d at 915 (citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 252–54, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (enforcement scheme in ERISA indicates Congress did not forget other remedies) and *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (ERISA remedies preempt others, even if some possible remedies are left out)). If a Texas common law claim packs more wallop than the bankruptcy relief, then Congress presumably intended to provide a more limited remedy for the malicious filing of an adversary proceeding in a voluntary bankruptcy. The fundamental vacancy in Fuqua's argument is the unsubstantiated presumption that bankruptcy laws necessarily must provide equivalent levels of recovery to the state common law claim.

Fuqua contends that, were we to hold his state malicious prosecution claim preempted, he would have no remedy because the bankruptcy court has discharged his debts and no longer has jurisdiction over his case. Section 350(a) states that after the estate is fully administered and the court has discharged the trustee, "the court shall close the case." Further, according to the bankruptcy rules, a court "shall enter *a final decree* closing the case." FED. R. BANKR.P. 3022 (emphasis added).

Neither a discharge of debts nor a dismissal closes the case; on the contrary, a bankruptcy case is not closed, and the bankruptcy court retains jurisdiction, until the final decree is entered on the docket sheet. *See In re Union Home and Indus.,*

*Inc.*, 375 B.R. 912, 917 (10th Cir.BAP 2007); *Sherman v. Sec. & Exch. Comm'n (In re Sherman)*, 491 F.3d 948, 967 (9th Cir.2007); *Greenfield Drive Storage Park v. Cal. Para–Prof'l Servs., Inc. (In re Greenfield Drive Storage Park)*, 207 B.R. 913, 918 (9th Cir.BAP 1997); *Singleton v. Countrywide Home Loans, Inc. (In re Singleton)*, 358 B.R. 253, 256 (D.S.C.2006) (holding that dismissal of a bankruptcy case does not deprive the court of jurisdiction; it must be closed); *In re Hasan*, 287 B.R. 308, 311 (Bankr.D.Conn.2002) (holding that a debtor's voluntary dismissal did not close the case and that the bankruptcy court retained jurisdiction to impose sanctions on the debtor); *In re A.H. Robins Co.*, 219 B.R. 145, 149 (Bankr.E.D.Va. 1998). *See also* 9 COLLIER ON BANKR. § 5009.01 (15th ed.2006). Once the bankruptcy case is closed, there is no longer a bankruptcy estate, and there can no longer be "related to" jurisdiction. 9 COLLIER ON BANKR. § 5009.01. As such, the bankruptcy court only then loses jurisdiction.

Graber states that there is no order in the record closing Fuqua's Chapter 7 case. Fuqua does not assert that a final order was issued and has presented no evidence that his bankruptcy case was ever closed. *See A.M.S. Printing Corp. v. Wernick (In re Wernick)*, 242 B.R. 194, 196 (Bankr. S.D.Fla.1999); *Edwards v. Sieger (In re Sieger)*, 200 B.R. 636, 639 (Bankr.N.D.Ind. 1996). If his case remains open, the bankruptcy court retains jurisdiction, and Fuqua could petition that court for appropriate remedies. Moreover, if the bankruptcy case has in fact been closed, Fuqua could petition the court to reopen it "to accord relief to the debtor." 11 U.S.C. § 350(b). Fuqua has not persuaded me that he would have no relief in bankruptcy.

Ultimately, Congress, not the state courts, should decide what incentives and penalties are appropriate to address litigation conduct in the bankruptcy proceedings and when those incentives or penalties should be used. *See Gonzales v. Parks*, 830 F.2d 1033, 1036–37 (9th Cir. 1987).

### B. The Court's Recognition of a State Common Law Malicious Prosecution Claim for Adversary Proceedings Conflicts with Congress's Decision Not to Create Such a Claim for Voluntary Chapter 7 Bankruptcies.

"[B]ankruptcy principles come from federal rather than state law." *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004) (Easterbrook, J.) (citing *Cox v. Zale Del., Inc.*, 239 F.3d 910, 916 (7th Cir.2001) (Posner, J.)). In bankruptcy, "the debtor's protection and remedy remain[ ] under the Bankruptcy Act." *Kokoszka v. Belford*, 417 U.S. 642, 651, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974) (holding superceded in part by statute). The "delicate balance of a debtor's protections and obligations during the bankruptcy procedure" have been fixed, modified, overhauled, and set by Congress over more than a century, emanating from explicit constitutional authority to make the bankruptcy laws. *Kokoszka*, 417 U.S. at 651, 94 S.Ct. 2431.

Congress provided a roadway to its intent in the relevant provisions of the Bankruptcy Code. It includes both voluntary and involuntary bankruptcies under Chapters 7 and 11. *See* 11 U.S.C. §§ 301, 303. In section 303, Congress promulgated a statutory analogue to state law malicious prosecution claims for abuse of bankruptcy proceedings in involuntary cases. *Id.* Section 303(i) provides for recovery of "any damages proximately caused," including actual and exemplary damages, by filing an involuntary petition in bad faith. *Id.* By its language, section 303(i) remedies include the damages that may be recovered under Texas common law for mali-

cious prosecution. *See, e.g., Fifth Club, Inc. v. Ramirez,* 196 S.W.3d 788, 798 (Tex. 2006) (allowing mental anguish damages); *Ellis County State Bank v. Keever,* 915 S.W.2d 478, 479 (Tex.1995) (discussing sufficiency of the evidence for punitive damages). Courts have consistently held that section 303(i) preempts state law actions for malicious prosecution in involuntary bankruptcy proceedings.[6]

Importantly, for this case and Fuqua's claim, Congress did not similarly create a vehicle for recovery of "all damages proximately caused" or exemplary damages for voluntary Chapter 7 proceedings. Instead, Congress created remedies to recover attorneys' fees and costs as sanctions. The extensive remedial provisions for involuntary petitions indicate that Congress did not ignore but considered sanctions, equitable remedies, and compensatory and exemplary damages in the bankruptcy scheme. *MSR Exploration,* 74 F.3d at 913. Where Congress includes damages provisions in one section of a statute but omits them in another section of the same statute, we presume Congress acted intentionally and purposefully in the disparate inclusion or exclusion. *Clay v. U.S.,* 537 U.S. 522, 528, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003); *Duncan v. Walker,* 533 U.S. 167, 173, 121 S.Ct. 2120, 150 L.Ed.2d 251

(2001). In this context, Congress's creation of sanctioning tools, albeit broad, rather than damages, speaks loudly to Congress's intent for conduct constituting malicious prosecution in voluntary Chapter 7 proceedings. By allowing Fuqua's Texas common law prosecution claim to proceed for actions that occurred entirely in bankruptcy, the Court, in effect, creates a malicious prosecution claim for voluntary Chapter 7 bankruptcies that Congress saw fit not to create.

There is no provision comparable to a Texas malicious prosecution claim directed specifically at the voluntary filings of a debtor or an adversary proceeding instituted by a creditor. There are, however, many other remedial provisions in the Code that could apply. *See, e.g.,* 11 U.S.C. § 362(k) (willful violation of automatic stays); 11 U.S.C. § 707(b) (dismissal for "substantial abuse"); 11 U.S.C. § 930(a) (dismissal under Chapter 9); 11 U.S.C. § 1112(b) (dismissal under Chapter 11); 28 U.S.C. § 1927 (liability for excessive costs for "unreasonably and vexatiously" multiplying proceedings). And like 303(i), section 362(k) has been held to preempt state law abuse of process claims for violations of an automatic stay. *See E. Equip. & Servs. Corp. v. Factory Point Nat'l Bank,* 236 F.3d 117, 120 (2d Cir.2001) (preemp-

**6.** *See Miles v. Okun (In re Miles),* 430 F.3d 1083, 1089 (9th Cir.2005); *Glannon,* 261 B.R. at 264; *Koffman v. Osteoimplant Tech., Inc.,* 182 B.R. 115, 123–28 (D.Md.1995); *Mason v. Smith,* 140 N.H. 696, 672 A.2d 705, 708 (1996); *Sarno v. Thermen,* 239 Ill.App.3d 1034, 180 Ill.Dec. 889, 608 N.E.2d 11, 18 (1992); *Gene R. Smith Corp. v. Terry's Tractor, Inc.,* 209 Cal.App.3d 951, 257 Cal.Rptr. 598, 600 (1989).

A minority of courts have refused to adopt this reasoning. *See Paradise Hotel Corp. v. Bank of Nova Scotia,* 842 F.2d 47, 52 (3d Cir.1988) (reasoning that because section 303(i) is not available where debtor has converted a Chapter 7 proceeding to a Chapter 11 proceeding, it cannot be an exclusive rem-

edy for abuse of process and malicious prosecution claims); *R.L. LaRoche, Inc. v. Barnett Bank of S. Fla.,* 661 So.2d 855, 859–64 (Fla. Dist.Ct.App.1995). However, *Paradise Hotel* has been distinguished as the minority view. *See Shiner v. Moriarty,* 706 A.2d 1228, 1238 (Pa.Super.Ct.1998). Further, a subsequent member of the court that issued *R.L. LaRoche* identified the decision's minority status in light of the development of the law in this area and encouraged his court to recede from that position. *Mullin v. Orthwein,* 772 So.2d 30, 31 (Fla.Dist.Ct.App.2000) (Gross, J., concurring) (distinguishing other cases in line with it as not being based on conduct occurring in bankruptcy).

tion of jurisdiction); *Periera v. Chapman,* 92 B.R. 903, 908 (C.D.Cal.1988); *Brandt v. Swisstronics, Inc. (In re Shape),* 135 B.R. 707, 708–09 (Bankr.D.Me.1992); *Koffman,* 182 B.R. at 123–28 (preemption holding based on both section 303(i) and section 362(k)); *Smith v. Mitchell Constr. Co.,* 225 Ga.App. 383, 481 S.E.2d 558, 561 (1997). *See also Halas v. Platek,* 239 B.R. 784, 792 (N.D.Ill.1999) (holding that because a claim for sanctions under section 362(k) is within the exclusive jurisdiction of federal courts, state court lacked subject matter jurisdiction over claim).

The existence of such an extensive remedial scheme indicates congressional intent for bankruptcy law to "occupy exclusively" the regulation of conduct amounting to malicious prosecution or abusive filings in the bankruptcy process. *English v. Gen. Elec. Co.,* 496 U.S. 72, 79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). An overlay of fifty states' common law claims would damage or interfere with the federal scheme. In addition to the Bankruptcy Code's extensive remedial scheme indicating congressional intent, the constitutionally prescribed need for uniformity in the bankruptcy laws is a special feature that warrants preemption. *Id.*

## C. The Required Uniformity of Bankruptcy Laws Mitigates Against Development of State Common Law Claims for Misconduct in Bankruptcy Proceedings.

The Constitution grants Congress the authority to establish "uniform Laws" on the subject of bankruptcies. U.S. CONST. art. I, § 8. Utilizing this power, Congress created comprehensive regulations on the subject of bankruptcy and vested original and exclusive jurisdiction over bankruptcy petitions in the federal district courts. 28 U.S.C. § 1334(a). Allowing state court actions for abuse of the bankruptcy process conflicts with this goal of uniformity.

"[T]he unique, historical, and even constitutional need for uniformity in the administration of the bankruptcy laws is another indication that Congress wished to leave the regulation of parties before the bankruptcy court in the hands of the federal courts alone." *See MSR Exploration,* 74 F.3d at 915.

There are several reasons to preclude these types of state common law claims to ensure the uniformity of bankruptcy law. First, Congress's authorization of certain penalties for frivolous filings in its pervasive promulgation of bankruptcy laws "should be read as an implicit rejection of other penalties, including the kind of substantial damage awards that might be available in state court tort suits." *Gonzales,* 830 F.2d at 1036. Second, the ability to sue parties in bankruptcy in civil proceedings under state law that is inconsistent with the Bankruptcy Code would threaten the uniformity of federal bankruptcy law by potentially affecting parties' rights before the bankruptcy court. *See Gonzales,* 830 F.2d at 1035 (discussing a claim against debtor for maliciously filing a voluntary petition). Third, the threat of being sued in tort in state court could deter persons from exercising their rights in bankruptcy, for instance by making them reluctant to file an adversary proceeding. *See id.* at 1036; *MSR Exploration,* 74 F.3d at 916.

"While it is true that bankruptcy law makes reference to state law at many points, the adjustment of rights and duties within the bankruptcy process itself is uniquely and exclusively federal." *MSR Exploration,* 74 F.3d at 916. Moreover,

It is very unlikely that Congress intended to permit the superimposition of state remedies on the many activities that might be undertaken in the management of the bankruptcy process ... [T]he highly complex laws needed to constitute

the bankruptcy courts and regulate the rights of debtors and creditors also underscore the need to jealously guard the bankruptcy process from even slight incursions and disruptions brought about by state malicious prosecution actions. *Id.* at 914. Even what may be slight incursions could very well collectively and over time, with fifty different jurisdictions considering them, even in a well-intentioned fashion, undermine the uniformity and objectives of the federal bankruptcy system.

Fuqua argues that Congress intended state law to supplement this area of bankruptcy. I disagree and conclude that, based on the remedial scheme established and the need for uniformity, Congress intended to preempt state common law claims based on malicious proceedings in a bankruptcy case to avoid such claims presenting "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" and to avoid undermining the constitutional mandate of "uniform Laws on the subject of Bankruptcies throughout the United States." *Hines,* 312 U.S. at 67, 61 S.Ct. 399. *See* U.S. CONST. art. I, § 8.

## V. Preemption of Jurisdiction

Ordinarily, federal preemption operates as an affirmative defense to a plaintiff's state law claims, but does not deprive a state court of jurisdiction over those claims. *Mills v. Warner Lambert Co.,* 157 S.W.3d 424, 427 (Tex.2005) (citing *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)). There are, however, situations in which federal law may preempt conflicting state-court jurisdiction. *Longshoremen's,* 476 U.S. at 388, 106 S.Ct. 1904. *See also Gorman v. Life Ins. Co. of N. Am.,* 811 S.W.2d 542, 547 (Tex.1991). State court jurisdiction is affected only when Congress requires that claims be addressed exclusively in a federal forum. *Mills,* 157 S.W.3d at 425 (citing

*San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 242–45, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959)). Whether a trial court has subject matter jurisdiction is a legal question we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004); *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998).

It is clearly within Congress' powers to establish an exclusive federal forum to adjudicate issues of federal law in a particular area that Congress has the authority to regulate under the Constitution. Whether it has done so in a specific case is the question that must be answered when a party claims that a state court's jurisdiction is pre-empted. *Longshoremen's,* 476 U.S. at 388, 106 S.Ct. 1904 (citation omitted). *See Mills,* 157 S.W.3d at 427; *Gorman,* 811 S.W.2d at 546. The United States Supreme Court refers to the divesture of state-court jurisdiction by federal law as "*Garmon* preemption." *Longshoremen's,* 476 U.S. at 388–89, 391, 106 S.Ct. 1904.

The bankruptcy courts' jurisdiction is established by sections 157 and 1334 of title 28 of the United States Code. *Celotex,* 514 U.S. at 307, 115 S.Ct. 1493. Section 1334(a) states that "the district courts shall have original and exclusive jurisdiction of all cases under title 11," which refers to the bankruptcy petition itself. *Wood v. Wood (In re Wood),* 825 F.2d 90, 92 (5th Cir.1987). Section 1334(b) states that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Therefore, although Congress expressed its intent to create an exclusive federal forum with respect to cases "under title 11," "[i]n other matters arising in or related to title 11 cases, unless the Code provides otherwise, state courts have concurrent jurisdic-

tion." *Sanders v. City of Brady (In re Brady, Tex., Mun. Gas Corp.)*, 936 F.2d 212, 218 (5th Cir.1991).

The parties do not dispute that Fuqua's malicious prosecution claim, or the adversary proceeding upon which it is based, is anything more than merely "related to" a title 11 case, as opposed to a case "under title 11." Thus, this is not the type of case for which Congress provided explicit forum-preempting language. *See, e.g., Mills*, 157 S.W.3d at 427–28 (referring to the holding in *Gorman*, 811 S.W.2d at 547–49, that state courts have no jurisdiction over certain ERISA claims because 29 U.S.C. § 1132(e)(1) provides that "the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter . . . .").

The lack of explicit forum-preempting language regarding Fuqua's claim does not mean, however, that Congress did not intend to establish an exclusive federal forum for claims based on abuse of the bankruptcy process. " '[T]he presumption of concurrent jurisdiction can be rebutted by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests.' " *Mills*, 157 S.W.3d at 428 (quoting *Tafflin v. Levitt*, 493 U.S. 455, 459–60, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990)). For instance, in *Garmon*, the U.S. Supreme Court held that because Congress had enacted such a "complex and interrelated federal scheme of law, remedy, and administration" in the National Labor Relations Act, "due regard for the federal enactment requires that state jurisdiction must yield." 359 U.S. at 243–44, 79 S.Ct. 773 (citation omitted). Similarly, in *Longshoremen's*, the Court held that neither state courts nor federal courts had jurisdiction to hear claims over which Congress intended the National Labor Relations Board to have exclusive jurisdiction. 476 U.S. at 390–91,

106 S.Ct. 1904. But these cases dealt with the unique federal scheme of the National Labor Relations Act and Congress's intent that both state and federal courts "defer to the exclusive competence of the National Labor Relations Board" to avert "the danger of state interference with national policy." *Longshoremen's*, 476 U.S. at 390, 106 S.Ct. 1904 (quoting *Garmon*, 359 U.S. at 245, 79 S.Ct. 773).

Assuming, as the parties concede, that this claim is "related to" a bankruptcy case, the claim is one of many for which Congress declined to provide exclusive jurisdiction in the federal courts. *See* 28 U.S.C. §§ 1334(b), 157 (establishing the federal courts' original, but not exclusive, jurisdiction over "related to" matters and "core proceedings"). The jurisdictional scheme created by Congress thus prevents me from concluding that Congress intended to create an exclusive federal forum for the claims made in an adversary proceeding. Consequently, only a preemption argument related to the choice of law is viable.

## VI. Conclusion

Because Congress created an extensive remedial scheme in the Bankruptcy Code to address abuse of process in bankruptcy proceedings, and because the constitutional goal of "uniform [bankruptcy] laws . . . throughout the United States" could be undermined by allowing state law malicious prosecution actions based on the filing of an adversary proceeding, I would hold that such a claim is preempted by federal bankruptcy law. Preemption operates in this case not to deprive the state court of jurisdiction, but as an affirmative defense to Fuqua's claims. Congress intended to supersede state law claims for malicious prosecution of the bankruptcy process, not to divest state courts of jurisdiction over such claims. I would affirm the court of appeals' judgment that the district court erred in dismissing this case

for lack of subject matter jurisdiction, but I would reverse the court of appeals' judgment that a Texas common law malicious prosecution claim may be predicated on conduct that occurred entirely in the bankruptcy court and which the Bankruptcy Code's extensive remedial and sanction provisions address.